UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>HARRIS BRUCE LANDGARTEN,<br><br>　　　　　　　Defendant. | Case No. 18-cv-3824<br><br>ECF Case<br><br>**COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT AND COMMISSION REGULATIONS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Commodity Futures Trading Commission ("CFTC" or "Commission"), by and through its attorneys, alleges as follows:

## I.　SUMMARY

1.　Since at least July 2014 through at least March 2017 (the "Relevant Period"), Harris Bruce Landgarten ("Landgarten" or "Defendant"), while acting as a commodity pool operator ("CPO"), engaged in a scheme to fraudulently obtain money from a commodity pool he operated, the Tradeanedge Members Fund ("TMF" or the "Fund"). Defendant would incur purported Fund expenses and then withdraw money from the Fund to reimburse himself for these expenses, without ever disclosing either the purported expenses or the reimbursement withdrawals to the three investors who participated in the Fund ("TMF Participants"). During the Relevant Period, Defendant wrongfully obtained approximately $80,000 from TMF Participants through this scheme.

2.　Rather than disclose that he was incurring purported expenses and using pool participants' funds to pay for the purported Fund expenses, Defendant instead misrepresented to TMF Participants—on statements he prepared and provided—that their investments were worth

an amount that included the funds he had already spent.  Over the course of the Relevant Period, as Defendant continued to withdraw money from the Fund, the value of the TMF Participants' investments as reflected on the statements prepared by Defendant diverged further and further from the amount of money actually in the Fund.  Eventually, in or around October 2016, while he continued to represent to TMF Participants that, collectively, their investments were worth approximately $80,000, the Fund had only approximately $8,000 in its accounts.  Defendant claimed the entire $8,000 was owed to him for unreimbursed expenses, and failed to use the remaining $8,000 to honor a participant's withdrawal request.  Thus, for TMF Participants, the value of the Fund was effectively zero.

3. Defendant characterized the entirety of the $80,000 he wrongfully obtained as TMF expenses.  However, Defendant only intermittently kept contemporaneous accounting records of claimed expenses and money he withdrew to reimburse himself for such claimed expenses.  On occasion, months would pass before Defendant would reconcile expenses and reimbursements.  In part because of this poor record keeping, from time to time during the Relevant Period, Defendant withdrew from TMF money in excess of that which he characterized as reimbursements for expenses.  At times these amounts exceeded $10,000.  By withdrawing money that he did not characterize as reimbursements for expenses and that he later recorded in Fund records as money that he owed to the Fund, and by mixing that money with the funds of another person or persons, Defendant commingled TMF's funds with non-pool funds.

4. Through this conduct and the conduct further described herein, Defendant engaged, is engaging, or is about to engage in acts and practices in violation of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 1–26 (2012), and Commission Regulations ("Regulations") promulgated thereunder, 17 C.F.R. pts. 1–190 (2017), specifically Section 4b(a)(1)(A)–(C) of the

2

Act, 7 U.S.C. § 6b(a)(1)(A)–(C); Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1); and Regulation 4.20(c), 17 C.F.R. 4.20(c).

5. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, the Commission brings this action to enjoin such acts and practices and compel compliance with the Act. In addition, the Commission seeks civil monetary penalties and remedial ancillary relief, including, but not limited to, trading and registration bans, restitution, disgorgement, rescission, pre- and post-judgment interest, and such other relief as the Court may deem necessary and appropriate.

6. Unless restrained and enjoined by this Court, Defendant is likely to continue to engage in the acts and practices alleged in this Complaint and similar acts and practices, as more fully described below.

## II.   JURISDICTION AND VENUE

7. **Jurisdiction**. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (2012) (federal question jurisdiction) and 28 U.S.C. § 1345 (2012), which provides that district courts have original jurisdiction over civil actions commenced by the United States or by any agency expressly authorized to sue by Act of Congress. In addition, Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), provides that district courts have jurisdiction to hear actions brought by the Commission for injunctive relief and to enforce compliance with the Act whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

8. **Venue**. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2012), because the Defendant resides and transacts business in this District and acts and practices in violation of the Act occurred, are occurring, or are about to occur, within this District.

### III.   THE PARTIES

9.   Plaintiff **Commodity Futures Trading Commission** is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act and the Regulations.

10.   Defendant **Harris Bruce Landgarten** is a resident of Old Brookville, New York. Defendant is the CPO of TMF.  Defendant claimed exemption from registration as the CPO of the Fund under Regulation 4.13(a)(2), 17 C.F.R. 4.13(a)(2) (2017).  Landgarten was previously registered with the CFTC as an associated person of a now-defunct commodity trading advisor and CPO.  Landgarten is not currently registered with the CFTC in any capacity.

### IV.   STATUTORY AND REGULATORY BACKGROUND

11.   A "commodity pool" is defined in Section 1a(10) of the Act, 7 U.S.C. § 1a(10) (2012), as any investment trust, syndicate, or similar form of enterprise operated for the purpose of trading in commodity interests.

12.   A "commodity pool operator" is defined in 7 U.S.C. § 1a(11)(A), in relevant part, as any person engaged in a business that is of the nature of a commodity pool, investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property, either directly or through capital contributions, the sale of stock or other forms of securities, or otherwise, for the purpose of trading in commodity interests, including, among other things, retail commodity transactions described in Section 2(c)(2)(D) of the Act, 7 U.S.C. § 2(c)(2)(D) (2012).

13.   A "participant" in a commodity pool is defined in Regulation 4.10(c), 17 C.F.R. § 4.10(c) (2017), in relevant part as any person who "has any direct financial interest in a pool."

14.   The operator of a commodity pool is prohibited by Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2017), from commingling pool funds with the funds of any other person.

15. With certain exemptions and exclusions, Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2012), requires all CPOs to be registered with the Commission.

16. Among other exemptions to the requirement that CPOs must register with the Commission, Regulation 4.13(a)(2), 17 C.F.R. § 4.13(a)(2) (2017), provides that a CPO may claim exemption from registration if none of the commodity pools operated by the CPO has more than fifteen participants at any time and the total gross capital contributions it receives do not total more than $400,000.

## V.  FACTS

17. During the Relevant Period, Defendant operated the commodity pool TMF, trading commodity futures for or on behalf of pool participants on exchanges that are designated contract markets, including on the New York Mercantile Exchange ("NYMEX") and the Commodity Exchange, Inc. ("COMEX").  Three participants, including Participant A, invested a total of $150,000 in TMF.

**Defendant's Undisclosed Withdrawals from the Fund**

18. Beginning at the inception of TMF in July 2014, and continuing throughout the Relevant Period, Defendant incurred what he characterized as expenses of TMF.

19. Under the Fund's governing documents, some of these claimed expenses could have been permissible, while others were not permissible Fund expenses.  The Fund Limited Partnership Agreement ("LPA") provided that "[n]otwithstanding its right to reimbursement from the Partnership, the General Partner [Defendant] may elect to pay certain expenses without receiving reimbursement from the Partnership."

20. Where these claimed expenses were owed to third parties, Defendant would often pay the expense through use of his personal credit card, among other means.  In other instances,

these claimed expenses were "owed" to Defendant himself (such as claimed expenses for the use of a room in Defendant's home as the office of the Fund).

21. After incurring these claimed expenses, whether owed to a third party or "owed" to himself, Defendant would reimburse himself from the Fund by withdrawals from the Fund bank account by various means including ATM withdrawals, use of the Fund debit card, and ACH electronic transfer. When TMF's bank account did not contain sufficient funds to cover the reimbursement, Defendant would transfer money from the Fund's FCM account to the Fund's bank account, and then effect the withdrawal.

22. Nothing in the Fund's governing documents permitted Defendant to incur and reimburse himself for Fund expenses without disclosing the expenses or the reimbursements to TMF Participants.

23. At no point during the Relevant Period did Defendant disclose to any of the TMF Participants, either before or after a participant's decision to invest, that TMF was incurring such expenses. Further, at no point during the Relevant Period did Defendant disclose to any of the TMF Participants that he had paid certain expenses purportedly on behalf of TMF and had reimbursed himself from TMF funds.

24. By in or around October 2016, Defendant had incurred over $100,000 in claimed expenses—approximately two-thirds of the total funds invested in TMF—and had secretly reimbursed himself approximately $92,000 from the Fund while participants believed their funds were being used for trading and were not aware that TMF had incurred any expenses.

**Defendant's Affirmative Misrepresentations to Participants**

25. Defendant affirmatively prepared and distributed statements ("Account Statements") to the TMF Participants, via physical and electronic mail. Each Account Statement

6

was directed to a single participant, and reflected the value of that participant's investment in the Fund, as of the end of a particular month.  No Account Statement contained information about the value of any other participant's investment in the Fund.

26.     Every Account Statement prepared and distributed by Defendant showed that the value of the participant's investment in TMF was affected only by (i) trading gains and losses and (ii) amounts Defendant withdrew from the participant's account for management and incentive fees that were disclosed in the LPA or a one-time account set-up fee.  No Account Statement indicated in any way that the value of the participant's investment was ever reduced by anything other than trading losses and management, incentive, and one-time account set-up fees.  Further, no Account Statement indicated in any way that Defendant was incurring any expenses on behalf of the Fund, or that he was reimbursing himself for such claimed expenses.  Nor did Defendant inform participants in any other way that the Fund was reimbursing Defendant for expenses that he had purportedly incurred.

27.     Throughout the Relevant Period, Defendant incurred claimed Fund expenses and reimbursed himself from TMF's bank account for these claimed expenses.  Because the claimed expenses were not reflected on the Account Statements, the Account Statements misrepresented the value of each participant's proportional share of the remaining money in the Fund.  For the same reason, the Account Statements misrepresented the value of each TMF Participant's investment in the Fund.  Over time, as Defendant continued to withdraw funds from TMF accounts, the amount remaining in the Fund diverged further and further from the amounts shown on the Account Statements.

28.     By the end of October 2016, as a result both of trading losses and Defendant's withdrawals from TMF, the Fund had only approximately $8,000 remaining in its accounts.  At

that time, Defendant had incurred an additional approximately $8,000 of claimed expenses for which he had not yet reimbursed himself from the Fund. Further, at that time Defendant was refusing to honor a participant's withdrawal request. Thus, for TMF Participants, at the end of October 2016 the value of the Fund was effectively zero.

29. At the same time that the value of the Fund was effectively zero, Defendant was representing to TMF Participants, by means of the Account Statements Defendant prepared and distributed, that TMF Participants had a total of approximately $80,000 remaining in the Fund.

**Defendant's Refusal To Honor a Withdrawal Request**

30. In September 2015, one participant in the Fund, Participant A, indicated to Defendant that he wished to withdraw his investment in the Fund because of the Fund's poor performance. In a series of communications with Participant A, conducted by means of emails and internet-based video conferences, Defendant sought to persuade Participant A not to withdraw from the Fund.

31. As a result of Defendant's efforts, in early November 2015 Participant A informed Defendant that he would leave his investment in TMF and reevaluate the Fund's performance in early 2016.

32. As of November 2015, TMF still had sufficient funds to honor Participant A's withdrawal request. However, TMF had less funds than the total amount Defendant reported to all participants on each participant's Account Statement. Thus, Defendant could not have honored simultaneous withdrawal requests from all participants.

33. On March 31, 2016, still dissatisfied with the Fund's performance, Participant A sent Defendant another request to withdraw from the Fund. At that time, according to

Participant A's Account Statement prepared by Defendant, Participant A's investment in TMF was worth approximately $33,000.

34. Over the next several months, Defendant repeatedly attempted to deter Participant A from withdrawing his funds, including by suggesting to Participant A that an issue with the IRS was preventing the return of Participant A's funds.

35. In fact, Defendant was unable to return Participant A's investment in TMF because the Fund had less than $33,000 left in its accounts. At no time did Defendant disclose that fact to Participant A, or tell Participant A that amounts Defendant had withdrawn from the Fund for claimed Fund expenses had anything to do with Defendant's failure to honor Participant A's withdrawal request.

36. When Defendant was unsuccessful at convincing Participant A to change his mind about withdrawing his investment from TMF a second time, Defendant simply failed to honor Participant A's withdrawal request and cut off all communication with Participant A.

**Defendant's Commingling of Pool and Non-Pool Money**

37. From time to time during the Relevant Period, as he incurred claimed Fund expenses, Defendant would record the claimed expenses in a Fund record entitled "Expenses Payable Harris Landgarten – Transaction Report" ("Transaction Report"). Further, from time to time during the Relevant Period, as he withdrew TMF funds to reimburse himself for claimed expenses, Defendant would record the reimbursements in the Transaction Report. The purported expenses and withdrawals listed in the Transaction Report were not disclosed to TMF Participants.

38. Defendant recorded reimbursements in the Transaction Report less frequently than he recorded claimed expenses. At times, up to nine months passed before Defendant recorded the amounts he had withdrawn from the Fund as reimbursements for claimed expenses.

39. Between the occasions when Defendant entered both claimed expenses and reimbursements in the Transaction Report, Defendant was unable to monitor, by any means, whether his withdrawals from the Fund were greater than the claimed expenses he had incurred. Nevertheless, during periods when he was unable to monitor whether his withdrawals exceeded the claimed expenses, Defendant continued to withdraw substantial sums from Fund accounts, by means including cash withdrawals and electronic transfers.

40. In part because Defendant continued to withdraw money from Fund accounts even when his inadequate record keeping practices left him unable to monitor whether his withdrawals exceeded claimed expenses, on numerous occasions Defendant withdrew more money from the Fund than he had incurred in claimed expenses, and thus commingled pool funds with non-pool funds.

41. After Defendant updated the Transaction Report, if he had withdrawn more money from the Fund than he had incurred in claimed expenses, the Transaction Report would reflect that fact. At one time, as reflected on the Transaction Report, Defendant had withdrawn more money from the Fund than he had incurred in claimed expenses continuously for nine consecutive months.

42. At times during the Relevant Period, the amount that Defendant had withdrawn in excess of claimed expenses and commingled with non-pool funds exceeded $10,000.

## VI.     VIOLATIONS OF THE COMMODITY EXCHANGE ACT AND REGULATIONS

### Count I—Fraud

**Violations of Section 4b(a)(1)(A)–(C) of the Act,
7 U.S.C. § 6b(a)(1)(A)–(C) (2012)**

43.     Paragraphs 1 through 42 are re-alleged and incorporated herein by reference.

44.     7 U.S.C. § 6b(a)(1)(A)–(C) makes it unlawful for any person, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person, on or subject to the rules of a designated contract market—

> (A) to cheat or defraud or attempt to cheat or defraud the other person;
>
> (B) willfully to make or cause to be made to the other person any false report or statement or willfully to enter or cause to be entered for the other person any false record; [or]
>
> (C) willfully to deceive or attempt to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or . . . with the other person.

45.     As described above, in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery, made, or to be made, for or on behalf of other persons, on designated contract markets, Defendant violated 7 U.S.C. § 6b(a)(1)(A)–(C) by cheating or defrauding, or attempting to cheat or defraud, or willfully deceiving or attempting to deceive TMF Participants by withdrawing funds from TMF to pay for purported expenses without disclosing he incurred such expenses or the related withdrawals, and by willfully creating and distributing to TMF Participants false Account Statements that reflected inaccurately the value of the TMF Participants' investments in the Fund.

11

46. Defendant engaged in the acts and practices described above willfully, knowingly, or recklessly.

47. Each act of cheating or defrauding, or attempting to cheat or defraud, or willfully deceiving or attempting to deceive TMF Participants, and each false report or statement, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6b(a)(1)(A)–(C).

## Count II—Fraud by a Commodity Pool Operator

### Violations of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1) (2012)

48. Paragraphs 1 through 42 are re-alleged and incorporated herein by reference.

49. 7 U.S.C. § 6*o*(1), in relevant part, makes it unlawful for a CPO, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly—

> (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or
>
> (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

50. During the Relevant Period, Defendant, acting as the CPO of the Fund, violated 7 U.S.C. § 6*o*(1) by, among other things, making material false statements and omissions regarding the value of the TMF Participants' investments and failing to disclose Defendant's withdrawals from the Fund.

51. As part of Defendant's fraud on TMF Participants, Defendant used the mails or other instrumentalities of interstate commerce.

52. Defendant engaged in the acts and practices described above knowingly or recklessly.

53. By this conduct, Defendant violated 7 U.S.C. § 6*o*(1).

54. Each act of (A) employing a device, scheme, or artifice to defraud or attempt to defraud any participant or prospective participant, or (B) engaging in any transaction, practice, or a course of business that operated as a fraud or deceit upon any participant or prospective participant, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of 7 U.S.C. § 6*o*(1).

## Count III—Commingling

### Violations of Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2017)

55. Paragraphs 1 through 42 are re-alleged and incorporated herein by reference.

56. 17 C.F.R. § 4.20(c) provides that commodity pool funds may not be commingled with the funds of any other person.

57. During the Relevant Period, Defendant violated 17 C.F.R. § 4.20(c) by commingling funds of the commodity pool he operated, TMF, with the property or funds of another person when he withdrew money from the Fund in excess of claimed expenses he had incurred on behalf of the Fund and mixed that money with non-pool funds.

58. Each act of improper commingling of pool funds is alleged as a separate and distinct violation of 17 C.F.R. § 4.20(c).

## VII. RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), and pursuant to its own equitable powers, enter:

    **A.** An order finding that Defendant violated Sections 4b(a)(1)(A)–(C) and 4*o*(1) of the Act, 7 U.S.C. §§ 6b(a)(1)(A)–(C), 6*o*(1) (2012); and Regulation 4.20(c), 17 C.F.R. § 4.20(c) (2017).

    **B.** An order of permanent injunction enjoining Landgarten and any of his officers, agents, servants, employees, assigns, or attorneys, and all persons in active

concert or participation with him, who receive actual notice of such order by personal service or otherwise, from:

  i. Engaging, directly or indirectly, in conduct in violation of 7 U.S.C. §§ 6b(a)(1)(A)–(C) and 6o(1) and 17 C.F.R. § 4.20(c);

  ii. Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2012));

  iii. Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2017, as amended by 83 Fed. Reg. 7979 (Feb. 23, 2018)), for his own personal account or for any account in which Defendant has a direct or indirect interest;

  iv. Having any commodity interests traded on Defendant's behalf;

  v. Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

  vi. Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

  vii. Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2017); and/or

  viii. Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2017)), agent, or any other officer or employee of any

      person (as that term is defined in 7 U.S.C. § 1a(38)), registered, exempted from registration, or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9)).

**C.** An order requiring Defendant to pay civil monetary penalties, plus post-judgment interest thereon, in an amount not to exceed the penalty prescribed by Section 6c(d)(1), 7 U.S.C. § 13a-1(d)(1)(2012), as adjusted for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act Improvements Act of 2015, Pub. L. No. 114-74, tit. VII, § 701, 129 Stat. 584, 599, *see* 17 C.F.R. § 143.8 (2018), for each violation of the Act and Regulations described herein;

**D.** An order directing Defendant to disgorge, pursuant to such procedure as the Court may order, all benefits received including, but not limited to, trading profits, revenues, salaries, commissions, fees, or loans derived directly or indirectly from acts or practices which constitute violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

**E.** An order directing Defendant to make full restitution, pursuant to such procedure as the Court may order, to each participant of the amount Defendant improperly withdrew from the Fund as a result of the acts and practices constituting violations of the Act and Regulations, as described herein, and pre- and post-judgment interest thereon from the date of such violations;

**F.** An order directing Defendant to rescind, pursuant to such procedure as the Court may order, all contracts and agreements, whether express or implied, entered into between, with, or among Defendant and any customer or investor whose funds

were received by Defendant as a result of the acts and practices which constituted violations of the Act and the Regulations, as described herein;

**G.** An order directing that Defendant make an accounting to the Court of all of his assets and liabilities, together with all funds he received from and paid to investors and other persons in connection with commodity transactions and all disbursements for any purpose whatsoever of funds received from commodity transactions, including salaries, commissions, interest, fees, loans, and other disbursement of money or property of any kind from at least July 2014 to the date of such accounting;

**H.** An order requiring Defendant to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412(a)(2) (2012); and

**I.** An order providing such other and further relief as the Court deems proper.

*   *   *

## VIII. **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

Dated:  July 2, 2018

        **COMMODITY FUTURES TRADING
          COMMISSION**

        Manal M. Sultan
        Deputy Director
        Commodity Futures Trading Commission
        Division of Enforcement

        By: */s/ David Acevedo*
        David Acevedo
        Chief Trial Attorney
        dacevedo@cftc.gov

        Gabriella Geanuleas
        Trial Attorney
        ggeanuleas@cftc.gov
        (*pro hac vice* admission application to be filed)

        Commodity Futures Trading Commission
        Division of Enforcement
        140 Broadway, 19th Floor
        New York, NY 10005
        Phone: (646) 746-9887
        Fax: (646) 746-9939

        ATTORNEYS FOR PLAINTIFF
        COMMODITY FUTURES TRADING
          COMMISSION